UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

R.B., ET AL.                                                    CIVIL ACTION

VERSUS

MARY LIVERS, ET AL.                                    NO.: 12-00679-BAJ-SCR

## RULING

Before the Court is a **Motion to Dismiss for Lack of Jurisdiction (Doc. 37)**, filed by Defendants, seeking an order from this Court dismissing Plaintiffs claims, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1).  Plaintiffs oppose the motion.  (Doc. 45.)  Defendants filed a reply memorandum.  (Doc. 52.)  The motion was heard with oral argument on December 20, 2012.  (Doc. 48.)

I.     **Background**

Plaintiffs R.B., Tracie Breaux ("Breaux"), Kelly Craddock ("Craddock"), and Dolly Robicheaux ("Robicheaux")[1] (collectively "Plaintiffs") filed this lawsuit, pursuant to 42 U.S.C. § 1983 ("Section 1983"), on behalf of themselves and a proposed class of youth who are or will be placed in a Louisiana Office of Juvenile Justice (the "OJJ") facility.

_____

[1] Plaintiff R.B., who is incarcerated at the Swanson Center for Youth, sues on his own behalf.  (Doc. 1, ¶ 5.)  T.B., who is incarcerated at an Office of Juvenile Justice contract facility, sues through her mother, Plaintiff Tracie Breaux.  (Doc. 1, ¶ 8; Doc. 1-8.)  A.C., who is incarcerated at the Bridge City Center for Youth, sues through his mother, Plaintiff Kelly Craddock.  (Doc. 1, ¶ 6; Doc. 1-6.)  J.R., who is incarcerated at the Bridge City Center for Youth, sues through his mother, Plaintiff Dolly Robicheaux.  (Doc. 1, ¶ 7; Doc. 1-7.)

Plaintiffs named as Defendants Mary Livers ("Livers"), in her official capacity as Deputy Secretary of the OJJ, Namon Reid III ("Reid"), in his official capacity as Director of the Bridge City Center for Youth ("BCCY"), Daron Brown ("Brown"), in his official capacity as Director of the Jetson Center for Youth ("JCY"), and R. Vickie Shoecraft ("Shoecraft"), in her official capacity as Director of the Swanson Center for Youth ("SCY") (collectively "Defendants"). (Doc. 1, ¶¶ 9-12.) Plaintiffs allege that Defendants have, and continue to, violate their rights under the First and Fourteenth Amendments to the United States Constitution, by denying them meaningful access to the courts.[2]

According to the complaint, OJJ is responsible for the care and control of all Louisiana youth adjudicated delinquent and placed in OJJ's custody for the purpose of rehabilitation and treatment. (Doc. 1, ¶ 19.) These youth consist of boys and girls between 10 and 21 years of age. (Doc. 1, ¶ 19.) BCCY, JCY, and SCY house male youth exclusively, but OJJ contracts with other facilities around the State of Louisiana to house female youth and other male youth. (Doc. 1, ¶ 20.) Plaintiffs allege a high percentage of the youth housed in BCCY, JCY, SCY, and OJJ contract facilities suffer from mental illness and low level educational functionality, and are in need of "outside advocates" to protect their civil and educational rights. (Doc. 1, ¶ 23.)

On or about September 1, 2000, OJJ entered into a consent agreement with private plaintiffs and the United States Department of Justice in order to address OJJ's

---

[2]Plaintiffs' lawsuit was transferred to this Court from the United States District Court for the Eastern District of Louisiana on October 31, 2012. (Doc. 35.)

constitutional violations, including denying youth access to the courts.[3] (Doc. 1, ¶ 24.) Plaintiffs allege, however, that since that time, Defendants have continued to violate their constitutional rights by denying them meaningful access to the courts. (Doc. 1, ¶¶ 25, 31-32, 35.) Plaintiffs seek a preliminary injunction, a permanent injunction, class certification, declaratory relief, and attorney's fees and costs. (Doc. 1.)

As to the instant motion, Defendants seek an order from this Court dismissing Plaintiffs claims pursuant to Rule 12(b)(1). Defendants argue that they are entitled to sovereign immunity, pursuant to the Eleventh Amendment. Thus, the Court does not have subject matter jurisdiction. Defendants further assert that the *Ex Parte Young*[4] exception to sovereign immunity does not apply. Defendants also contend that Plaintiffs do not have standing because their right of access to the courts claims are frivolous. In the alternative, Defendants argue that only Livers should remain a Defendant, as the other named Defendants are entitled to sovereign immunity.

Plaintiffs oppose the motion and argue that the *Ex Parte Young* exception applies to each Defendant.[5] Plaintiffs also contend that they do, in fact, have standing, and that

---

[3] *See Williams v. McKeithen*, 121 F.Supp. 2d 943, 944-45 (M.D. La. 2000).

[4] 209 U.S. 123 (1908).

[5] Initially, Plaintiffs did not file a memorandum in opposition to Defendants' Motion to Dismiss. Instead, Plaintiffs filed a Motion to Strike Defendant's Motion to Dismiss (Rec. Doc. 37) or in the Alternative Provide Enlarged Time to Respond to Defendants' Motion. (Doc. 39.) During the hearing on the matter, the undersigned heard and considered counsel for Plaintiffs' arguments in support of the Motion to Strike, as well as counsel for Defendants' arguments in opposition. Subsequently, the Court and the parties agreed that the Court must consider Defendants' Motion to Dismiss, that Plaintiffs would be permitted additional time to file a memorandum in opposition to Defendants Motion to Dismiss, and that Defendants would be permitted to reply to Plaintiffs' memorandum in opposition. (Doc. 48.) Accordingly, Plaintiffs' Motion to Strike Defendant's Motion to Dismiss (Rec. Doc. 37) or in the Alternative Provide Enlarged Time to Respond to Defendants'

their right of access to the courts allegations are legally sufficient.  Finally, Plaintiffs argue that they have sufficiently alleged specific claims against each of the Defendants. Thus, Defendants Reid, Brown, and Shoecraft should not be dismissed.

## II.   Standard of Review

Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims.  *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286-287 (5th Cir. 2012) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *Stockman v. FEC*, 138 F.3d 144, 151 (5th Cir. 1998)).  Under Rule 12(b)(1), a claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate" the claim.  *Id.* (quoting *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).   The court should consider a Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.  *Id.* (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2001)). Considering a Rule 12(b)(1) motion to dismiss first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice."  *Id.* (citing *Ramming*, 281 F.3d at 161).

A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6).  *Benton v. U.S.*, No. 91-1547, 1992 U.S. App. LEXIS 38464, at *3 (5th Cir. Feb. 12, 1992).  A complaint is subject to dismissal under 12(b)(6) if it fails "to state a claim upon which relief can be granted."  In reviewing

---

Motion (Doc. 39) was denied in part, and granted in part.

a Rule 12(b)(6) motion, a court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. V. Twombly*, 550 U.S. 544, 570 (2007).

In ruling on a Rule 12(b)(1) motion, however, "the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009), *cert. denied*, 558 U.S. 1111 (2009); *Ramming*, 281 F.3d at 161 (stating that a court ruling on a 12(b)(1) motion may evaluate "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts").[6] A motion to dismiss for lack of subject-matter jurisdiction should only be granted if it appears certain that the plaintiff cannot prove any set of facts in support of his claims entitling him to relief. *Wagstaff v. United States Dep't of Educ.*, 509 F.3d 661, 663 (5th Cir. 2007).

---

[6]Here, neither party has submitted affidavits, testimony, nor other evidentiary materials. Thus, the Court's review is limited to whether the allegations in the complaint are sufficient to establish subject-matter jurisdiction. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981) ("[I]f the defense merely files a Rule 12(b)(1) motion, the trial court is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true. If those jurisdictional allegations are sufficient the complaint stands.").

However, "[t]he burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Celestine v. TransWood, Inc.*, 467 Fed. Appx. 317, 318 (5th Cir. 2012) (quoting *Ramming*, 281 F.3d at 161). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* (quoting *Ramming*, 281 F.3d at 161). A pleading stating a claim for relief must contain "a short and plain statement of the grounds for the court's jurisdiction[.]" *Id.* (citing Fed. R. Civ. P. 8(a)(1)). In federal question cases, the party must demonstrate a non-frivolous claim based on federal law. *Gibbs v. Buck*, 307 U.S. 66, 72 (1939).

When a district court finds it lacks subject matter jurisdiction, its determination is not on the merits of the case, and does not bar the plaintiff from pursuing the claim in a proper jurisdiction. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (*per curiam*).

## III.   Analysis

### A.   Eleventh Amendment Sovereign Immunity from Suit in Federal Court

The Eleventh Amendment of the U.S. Constitution provides as follows:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI. This language expressly encompasses not only suits brought against a state by citizens of another state, but suits against a state by citizens of that same state. *See Hans v. Louisiana*, 134 U.S. 1 (1890); *Papasan v. Allain*, 478 U.S. 265, 276 (1986); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89,

6

98, (1984); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). "A state's Eleventh Amendment immunity extends to any state agency or entity deemed an alter ego or arm of the state." *Perez v. Region 20 Educ. Service Center*, 307 F.3d 318, 326 (5th Cir. 2002). In general, therefore, a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. *Lewis v. University of Texas Medical Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011) (citing *Pennhurst*, 465 U.S. 89, 100 (1984)). This jurisdictional bar applies regardless of the nature of the relief sought.[7] *Id.*

The Eleventh Amendment also bars a suit against a state official when "the state is a real, substantial party in interest." *Pennhurst*, 465 U.S. at 101-02 (citations omitted). Thus, the general rule is that relief sought against an officer is in fact against the sovereign if the decree would operate against the latter. And, as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief. *Pennhurst*, 465 U.S. at 101-02 (citations omitted); see also *Okpalobi v. Foster*, 244 F.3d

---

[7]The Court notes that a state's Eleventh Amendment immunity from suit in federal court is not absolute. *See Union Pac. R.R. Co. v. La. Pub. Serv. Comm'n*, 662 F.3d 336, 340 (5th Cir. 2011). A state's immunity may be abrogated by Congress as a means of enforcing the Fourteenth Amendment. *Id.* (citing *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999)). A state may also waive its Eleventh Amendment immunity by voluntarily invoking federal court jurisdiction, or by making a "clear declaration" that it intends to submit itself to federal court jurisdiction. *Id.* However, here, Section 1983 does not abrogate the State of Louisiana's Eleventh Amendment immunity, nor has the State waived its Eleventh Amendment immunity. *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999) (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979); La. R.S. § 13:5106). Further, Plaintiffs do not contend that Congress abrogated the State's Eleventh Amendment immunity, or that the State has waived such.

405, 412 (5th Cir. 2001) (plaintiff cannot evade Eleventh Amendment immunity by naming an individual state officer as a defendant in lieu of the state itself).

## B. *Ex Parte Young* Doctrine

In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court carved out an exception to Eleventh Amendment immunity. The Court held that enforcement of an unconstitutional law is not an official act because a state cannot confer authority on its officers to violate the Constitution or federal law. *Aguilar v. Tex. Dep't of Crim. Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998) (citing *American Bank & Trust Co. of Opelousas v. Dent*, 982 F.2d 917, 920-21 (5th Cir. 1993)). The *Ex Parte Young* exception "has been accepted as necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.'" *Pennhurst*, 465 U.S. at 105. Under this exception an individual official may be liable only for implementing a policy that is "itself [ ] a repudiation of constitutional rights" and "the moving force of the constitutional violation." *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (citing *Grandstaff v. City of Borger*, 767 F.2d 161, 169-70 (5th Cir. 1985)).

In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997). To meet the *Ex Parte Young* exception, a plaintiff's suit alleging a violation of federal law must be brought against individual persons in their official capacities as agents of the state, and the relief sought must be declaratory or injunctive in nature and

prospective in effect.  *Aguilar*, 160 F.3d at 1054 (citing *Saltz v. Tennessee Dep't of Employment Sec.*, 976 F.2d 966, 968 (5th Cir. 1992)).

C.  **The *Ex Parte Young* Doctrine and Plaintiffs' Section 1983 Claims**

"Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws.' [T]his provision safeguards certain rights conferred by federal statutes." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (citing *Maine v. Thiboutot*, 448 U.S. 1 (1980)). Here, Plaintiffs allege that Defendants, acting under color of state law, violated federal law by depriving Plaintiffs their First and Fourteenth Amendment right of access to the courts.

A substantive right of access to the courts has long been recognized. *Bounds v. Smith*, 430 U.S. 817, 821 (1977) ("It is now established beyond a doubt that prisoners have a constitutional right of access to the courts."). Access to the courts is protected by the First Amendment right to petition for redress of grievances. *Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983)* ("[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances."); *Wilson v. Thompson*, 593 F.2d 1375 (5th Cir. 1979). This right has also been found in the Fourteenth Amendment guarantees of procedural and substantive due process. *Ryland v. Shapiro*, 708 F.2d 967, 971-75 (5th Cir. 1983).

9

1.   **Plaintiffs' Right of Access to the Courts Claims Under the First and Fourteenth Amendments**[8]

In support of their motion, Defendants argue that the *Ex Parte Young* doctrine does not apply to Plaintiffs' right of access to the courts claims because Plaintiffs' claims are frivolous.  Defendants contend that Plaintiffs' claims lack a factual basis, and that Plaintiffs have failed to establish that prejudice or actual injury resulted from Defendants' alleged actions.   Thus, the *Ex Parte Young* doctrine does not apply, Defendants are entitled to the protections of the Eleventh Amendment, and Plaintiffs' claims must be dismissed for lack of subject-matter jurisdiction.

In opposition, Plaintiffs argue that their allegations, accepted as true, give rise to actionable claims.  According to Plaintiffs, in order to insure that youth who are placed in OJJ facilities have "adequate, effective, and meaningful" access to the courts, the State must permit them to consult with an attorney.  Plaintiffs further contend that they have sufficiently alleged that Defendants have, and continue to, deny youth placed in OJJ facilities access to counsel.  They also argue that they have sufficiently alleged that Defendants' actions frustrated their ability to file suits that are now untimely, and that Defendants' actions continue to frustrate their ability to file suits.  Thus, the *Ex Parte Young* doctrine applies, and Plaintiffs' claims should not be dismissed.

"Prisoners have a constitutional right of access to the courts that is 'adequate, effective, and meaningful.'"  *Terry v. Hubert*, 609 F.3d 757, 761 (5th Cir. 2010) (quoting

---

[8]Plaintiffs' complaint fails to allege specific facts related to their Fourteenth Amendment right of access to the courts claims.  Thus, Plaintiffs's claims under the First and Fourteenth Amendment will be analyzed together.

*Bounds*, 430 U.S. at 822).  However, this right "guarantees no particular methodology but rather the conferral of a capability - the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts."  *Lewis v. Casey*, 518 U.S. 343, 354; *see also Wiig v. Ulrich*, No. 12-40339, 2012 U.S. App. LEXIS 25544, at *1-2 (5th Cir. Dec. 11, 2012) ("The right of prisoners to meaningful court access 'encompasses only a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement.'") (quoting *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999)).

An inmate who brings a Section 1983 claim based on his right of access to the courts must be able to show that he incurred an actual injury in order to prevail.  *Turner v. Epps*, 460 Fed. Appx. 322, 327-328 (5th Cir. 2012) (citing *Lewis*, 518 U.S. at 351-53); *see also Bounds*, 430 U.S. at 825.  The right of access does not create "an abstract, freestanding right," but exists to vindicate other rights.  *Id.* (quoting *Lewis*, 518 U.S. at 351).  Thus, to have standing to sue, Plaintiffs must allege that he was prejudiced by the purported violation by showing that his ability to pursue a non-frivolous legal claim was hindered by the defendant's actions.  *Wiig*, 2012 U.S. App. LEXIS 25544, at * 2 ("To establish a valid claim for denial of access to the courts, an inmate must show that he suffered an actual injury as a result of the alleged denial.") (citing *Lewis*, 518 U.S. at 351-354).

Plaintiffs' complaint makes a number of allegations regarding the injuries allegedly suffered by the proposed class.  However, as stated by the Supreme Court

in *Lewis*, named plaintiffs must show that they personally have been injured:

> That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.

*Lewis*, 518 U.S. at 357 (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 40 n.20 (1976)).  *See also Johnson v.* Rodriguez, 110 F.3d 299, 305 n.8 (5th Cir. 1997) ("[A]s a general rule class injuries attributed to members of a class but not sustained by a named class representative cannot be remedied in the class action lawsuit."); *Vuyanich v. Republic Nat'l Bank of Dallas*, 723 F.2d 1195, 1200 (5th Cir. 1984), *cert. denied*, 469 U.S. 1073 (1984).  For this reason, the Court will limit its analysis to each named Plaintiffs' allegations.

### a.     Plaintiff R.B.'s Allegations

R.B. alleges that he was placed in lockdown as a form of punishment.  (Doc. 1, ¶ 46.)  During such time, he was denied access to counsel.  *Id.*  It is not clear from the complaint in which facility R.B. alleges he was placed in lockdown.  However, the complaint alleges he was housed in an OJJ contract facility for over a month, during which time he was denied access to counsel.  *Id.*  According to R.B., despite being charged with committing an adult criminal violation and subsequently transported to an adult jail, he was denied access to counsel.  *Id.*

The Court first notes that a conditions of confinement claim must satisfy tests for both objective and subject components.  *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992).  For the objective component, "extreme deprivations are required to make out a

conditions of confinement claim." *Id.* at 9.  A change in custodial status does not constitute an "extreme deprivation" because prison officials have broad discretion in classifying prisoners in terms of their custodial status.  *McCord v. Maggio*, 910 F.2d 1248, 1250 (5th Cir. 1990); *Wilkerson v. Stadler*, 329 F.3d 431, 436 (5th Cir. 2003). Further, only those conditions which impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" will implicate the protection of the Due Process Clause of the Fourteenth Amendment.  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  Even accepting R.B.'s allegations as true, and viewing them in the light most favorable to him, it cannot be said that he has plead sufficient facts to demonstrate that his placement in lockdown imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Accordingly, R.B. has failed to show his ability to pursue a non-frivolous conditions of confinement claim under the Due Process Clause of the Fourteenth Amendment.

Further, the complaint fails to state what adult criminal violation R.B. was charged with, whether he was convicted of such charges, or how he was prejudiced or injured by his inability to access counsel.  As indicated above, a civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations.  *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995).  Furthermore, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint."  *Macias v. Raul A.*

(Unknown) Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994), cert. denied, 513 U.S. 883 (1994).

For these reasons, the Court finds that R.B. has failed to sufficiently allege facts that demonstrate his ability to pursue a non-frivolous legal claim. Accordingly, the *Ex Parte Young* doctrine does not apply to his right to access the courts claims.

### b.   Plaintiff Tracie Breaux's Allegations (on Behalf of T.B.)

Breaux alleges that T.B. is currently in an OJJ contract facility. (Doc. 1, ¶ 47.) Before being placed in the OJJ contract facility, T.B. was placed in a Parish detention facility, which also contracts with OJJ. *Id.* Breaux alleges that T.B. was subjected to "consistent harassment" while housed in the Parish detention facility, and was denied access to counsel. *Id.* Breaux further contends the OJJ has failed to develop a policy that ensures youth placed in OJJ contract facilities are provided with meaningful and adequate access to counsel. *Id.* Instead, it relies on the practices of the respective contract facility. *Id.*

Breaux failed to provide the Court with any facts regarding the "consistent harassment" T.B. allegedly endured.[9] As a result, the Court is left to speculate. To the extent Breaux alleges T.B. was subjected to verbal harassment, the Fifth Circuit has held that "[m]ere allegations of verbal abuse do not present actionable claims under § 1983." *Bender v. Bruney*, 1 F.3d 271, 274 n.4 (5th Cir. 1993) (quoting *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983), cert. denied, 464 U.S. 998 (1983) ("As a rule,

---

[9]The complaint fails to sufficiently describe the type of harassment, the duration of the harassment, when the harassment occurred, where the harassment occurred, or who was involved.

'mere threatening language and gestures of a custodial officer do not, even if true, amount to a constitutional violation.'")).

Breaux has failed to sufficiently allege a constitutional violation.  For this reason, the Court finds that she has failed to demonstrate T.B.'s ability to pursue a non-frivolous legal claim.  Accordingly, the *Ex Parte Young* doctrine does not apply to Breaux's right to access the courts claims.

### c.   Plaintiff Kelly Craddock's Allegations (on Behalf of A.C.)

Craddock alleges that while A.C. was placed in lockdown, he was given undercooked, rotten, or inadequate food.  (Doc. 1, ¶ 45.)  Craddock also alleges A.C. was not permitted to attend school while on lockdown.  *Id.*  She further alleges that A.C. was prevented from contacting legal counsel because the phones used to contact counsel were broken.  *Id.*  Craddock also alleges that, on those occasions when A.C. is permitted to contact counsel, his calls are monitored by BCCY staff.  *Id.*

As indicated above, a change in custodial status does not amount to the type of "extreme deprivation" required to make out a conditions of confinement claim.  Further, to implicate the Due Process Clause, Plaintiffs must show "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

Here, Craddock failed to plead any facts whatsoever demonstrating that A.C.'s placement in lockdown imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  To the extent Craddock alleges Defendants prevented A.C. from attending school while he was in lockdown, she has

not alleged that school attendance is a cognizable right that would permit the Court to exercise jurisdiction.  In summary, Craddock has failed to show A.C.'s ability to pursue a non-frivolous conditions of confinement claim.

To the extent Craddock alleges that A.C. was deprived of food[10], this allegation implicates the Eighth Amendment's prohibition against cruel and unusual punishment. In order to establish an Eighth Amendment violation, an inmate must establish both a subjective and objective component.  The objective requirement necessitates that the inmate allege a sufficiently serious deprivation.  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  "Only those deprivations denying 'the minimal civilized measure of life's necessities are sufficiently grave' to constitute cruel and unusual punishment."  *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).  Whether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation. *Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998).  Here, Craddock failed to allege a sufficiently serious deprivation.  Indeed, Craddock's allegations fail to include any facts related to the amount or duration of the alleged food deprivation.

Further, in order to establish an Eighth Amendment violation, Craddock must establish that BCCY staff members acted with a sufficiently culpable state of mind measured by deliberate indifference, which is defined as knowing and disregarding an excessive risk of harm to A.C.'s health or safety.  *Farmer v. Brennen*, 511 U.S. 825, 834 (1994).  Here, Craddock failed to describe what, if any, injuries A.C. suffered as result

---

[10]It is not clear from the complaint whether Craddock intended to allege that A.C. was deprived of food, or that the quality of the food he received was inadequate, or both.

of the "undercooked, rotten, or inadequate food", nor did she allege that BBCY staff members knew and disregarded an excessive risk of harm to A.C.'s health or safety. Accordingly, Craddock has failed to show A.C.'s ability to pursue a non-frivolous Eight Amendment claim.

Craddock's allegations that A.C.'s telephone calls with counsel were monitored by BCCY staff may implicate the First and Sixth Amendment. *See, e.g. Moore v. Janing*, 427 F.Supp. 567, 576 (D. Ne. 1976). However, in order to survive a Rule 12(b)(1) motion to dismiss, a party must demonstrate a non-frivolous claim based on federal law.

Here, Craddock failed to allege that the telephone monitoring impeded A.C.'s ability to access counsel, or pursue a legally nonfrivolous claim. Thus, Craddock's unsubstantiated allegation that A.C.'s telephone calls with counsel were monitored is insufficient. See *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999) (citing *Walker v. south Cent. Bell Tel. Co.*, 904 F.2d 275, 277 (5th Cir. 1990) ("a complaint, which contains a 'bare bones' allegation that a wrong occurred and which does not plead any of the facts giving rise to the injury, does not provide adequate notice.").

In summary, the Court finds that Craddock has failed to sufficiently allege facts that demonstrate A.C.'s ability to pursue a non-frivolous legal claim. Accordingly, the *Ex Parte Young* doctrine does not apply to Craddock's right to access the courts claims.

### d.   Plaintiff Dolly Robicheaux's Allegations (on Behalf of J.R.)

According to Robicheaux, J.R. has been subjected to physical abuse at BCCY. (Doc. 1, ¶ 43.)   Robicheaux further alleges that J.R. was involved in a physical altercation with a BCCY staff member, that resulted in multiple injuries. *Id.* Robicheaux alleges, however, that he was not treated for those injuries. *Id.* She also alleges that J.R. was prevented from contacting legal counsel because the phones used to contact counsel were broken. (Doc. 1, ¶¶ 33, 43.)   According to Robicheaux, BCCY staff discouraged J.R. from calling counsel and "rat[ting] out BCCY." (Doc. 1, ¶ 43.)

Following the physical altercation, J.R. was arrested and transferred to a Jefferson Parish jail, where he finally received medical treatment. *Id.* Robicheaux alleges that, despite being subsequently arrested for committing an adult criminal violation, J.R. was denied access to counsel while in BCCY. *Id.* She further alleges that on those occasions when J.R. was permitted to contact counsel, his calls were monitored by BCCY staff. *Id.*

Here, Robicheaux does not allege an Eighth Amendment excessive force claim. Instead, the complaint merely alleges that J.R. has been subjected to physical abuse at BCCY. However, as discussed above, such a bare bones allegation is insufficient to establish an injury which may be redressed by this Court.

Although the Eighth Amendment "does not by its precise words, mandate a certain level of medical care for prisoners[,]" *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999), the Supreme Court has interpreted it as imposing a duty on prison officials

to "ensure that inmates receive adequate . . . medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an 'unnecessary and wanton infliction of pain.'" *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (quoting *Wilson*, 501 U.S. at 297). "A prison inmate can demonstrate an Eighth Amendment violation by showing that a prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* at 464 (quotation omitted).

As discussed above, there is both an objective and subjective standard for Eighth Amendment claims.  "A prison official acts with deliberate indifference 'only if [(A)] he knows that inmates face a substantial risk of serious bodily harm and [(B)] he disregards that risk by failing to take reasonable measures to abate it.'" *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Farmer*, 511 U.S. at 847). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Id.*  Further, "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference that results in substantial harm." *Easter*, 467 F.3d at 464 (quotation omitted).  In summary, "[d]eliberate indifference 'is an extremely high standard to meet.'" *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

Here, Robicheaux alleges that J.R. was involved in a physical altercation with a BCCY staff member, that resulted in multiple injuries, and that he was not treated for those injuries until he was arrested and transferred to a Jefferson Parish jail. (Doc. 1, ¶ 43.)    Robicheaux's allegations, however, are insufficient to support an Eighth Amendment claim.

Robicheaux failed to allege facts that demonstrate BCCY staff showed deliberate indifference to J.R.'s serious medical needs by intentionally denying or delaying his access to medical care. *Walker v. Butler*, 967 F.2d 176, 178 (5th Cir. 1992).    Nor does Robicheaux allege facts that demonstrate BCCY staff refused to treat J.R., ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for his serious medical needs. *Easter*, 467 F.3d at 464.    Indeed, the complaint merely alleges J.R. was not treated for his injuries until he was arrested and transferred to a Jefferson Parish jail.    Such bare bones allegations are insufficient to demonstrate an Eighth Amendment claim.    Further, Robicheaux failed to state what adult criminal violation J.R. was charged with, whether he was convicted of such charges, or how he was prejudiced or injured by his inability to access counsel.[11]

Like Craddock, Robicheaux failed to allege that the telephone monitoring impeded J.R.'s ability to access counsel, or pursue a legally nonfrivolous claim.    Thus,

---

[11]According to Defendants, J.R.'s right of access to the courts claim is legally frivolous because he pled guilty to the charge of battery on a corrections office employee, and was represented by counsel during all stages of the criminal proceeding.  Defendants, however, failed to provide the Court with evidence to support this assertion.  Further, Plaintiffs' complaint includes no such factual allegations.

Robicheaux's bare bones, unsubstantiated allegation that J.R.'s telephone calls with counsel were monitored is insufficient.

As indicated above, a civil rights plaintiff must support her claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea*, 47 F.3d at 1433. Based on the allegations in the complaint, it cannot be said that Robicheaux has plead sufficient facts to demonstrate J.R.'s ability to pursue a non-frivolous claim. Accordingly, the *Ex Parte Young* doctrine does not apply to Robicheaux's right to access the courts claims.

## IV.   Conclusion

Prison walls do not form a barrier separating prison inmates from the protections of the Constitution. *Turne v. Safley*, 482 U.S. 78, 84 (1987). Further, the Court recognizes the importance of access to counsel for youth placed in OJJ facilities so that they may receive "adequate, effective, and meaningful" access to the courts. However, as stated by the Supreme Court in *Lewis*, *only after* an "inmate shows that an *actionable* claim [challenging his sentence or conditions of confinement] which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented, because this capability of filing suit has not been provided," can the Court conclude that he has "demonstrate[d] that the State has failed to furnish 'adequate law libraries or adequate assistance from persons trained in the law.'" *Lewis*, 518 U.S. at 356 (emphasis added) (citing *Bounds*, 430 U.S. at 828).

As stated by Plaintiffs in their memorandum in opposition, when asserting a right of access to the courts claim, "the underlying cause of action and its lost remedy must

be addressed by allegations in the complaint sufficient to give fair notice to a defendant." (Doc. 45, p. 12) (quoting *Christopher v. Harbury*, 536 U.S. 403, 416 (2002)).  Despite this acknowledgment, Plaintiffs have simply failed to do so.

Even accepting Plaintiffs' allegations as true, and viewing them in the light most favorable to them, it cannot be said that the named Plaintiffs have plead sufficient facts to demonstrate their ability to pursue non-frivolous legal claims once the conditions allegedly denying them access to counsel are removed.  Further, to the extent Plaintiffs' allegations prove to be true, it does necessarily follow that this Court is the proper forum for Plaintiffs to pursue their claims.

Accordingly, the Court finds that the *Ex Parte Young* doctrine does not apply to Plaintiffs' right to access the courts claims.  Thus, Defendants are entitled to the protections of the Eleventh Amendment, and Plaintiffs' claims against Defendants must be dismissed for lack of subject-matter jurisdiction.

Accordingly,

**IT IS ORDERED** that Defendants' **Motion to Dismiss for Lack of Jurisdiction (Doc. 37)** is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' claims are **DISMISSED** <u>**WITHOUT**</u> **PREJUDICE**.

**IT IS FURTHER ORDERED** that **Plaintiffs' Motion for Immediate Preliminary Injunction (Doc. 4)** is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that **Plaintiffs' Motion for Class Certification (Doc. 19)** is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Defendants' **Motion to Stay Plaintiffs'**
**Motions for Preliminary Injunction and Class Certification (Doc. 38)** is **DENIED AS**
**MOOT**.

**IT IS FURTHER ORDERED** that **Plaintiffs' Motion to Strike Defendant's**
**Motion to Dismiss (Rec. Doc. 37) or in the Alternative Provide Enlarged Time to**
**Respond to Defendants' Motion (Doc. 39)** is **DENIED IN PART** and **GRANTED IN**
**PART**.

Baton Rouge, Louisiana, this 25th day of March 2013.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**