UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

R.B., ET AL.                                                                    CIVIL ACTION

VERSUS

MARY LIVERS, ET AL.                                                NO.: 12-00679-BAJ-SCR

RULING AND ORDER

Before the Court is **Plaintiffs' Motion to Vacate and Reconsider Ruling Dismissing Plaintiffs' Complaint (Doc. 55)**, filed by Plaintiffs R.B., Tracie Breaux, Kelly Craddock, and Dolly Robicheaux (collectively "Plaintiffs"), pursuant to Federal Rule of Civil Procedure ("Rule") 59(e), seeking an order from this Court reversing its previous ruling dismissing Plaintiffs' claims, without prejudice, for lack of subject matter jurisdiction. Defendants Mary Livers, Namon Reid, Daron Brown, and R. Vickie Shoecraft (collectively "Defendants") oppose the motion. (Doc. 57.) Oral argument is not necessary. Jurisdiction is proper, pursuant to 28 U.S.C. § 1331.

I.      **Background**

On March 25, 2013, this Court issued a ruling granting Defendants' motion to dismiss for lack of jurisdiction. (Doc. 53.) In granting the motion, the Court concluded that Plaintiffs had failed to sufficiently allege facts demonstrating their ability to pursue non-frivolous legal claims once the conditions allegedly denying them access to the courts were removed. Accordingly, the Court concluded that the *Ex parte Young*

exception did not apply, and thus, Plaintiffs claims were barred by the Eleventh Amendment.

In support of the instant motion, Plaintiffs contend that the Court made a manifest error of law when it concluded that the *Ex parte Young* exception to Eleventh Amendment immunity does not apply to Plaintiffs' claims. *Ex parte Young*, 209 U.S. 123 (1908). Plaintiffs also argue that the Court improperly evaluated the sufficiency of their underlying conditions of confinement claims, using a heightened pleading standard. Accordingly, Plaintiffs request the Court reconsider and reverse its previous ruling.

In opposition, Defendants argue that Plaintiffs have failed to identify a manifest error of law. Defendants contend that the Court properly evaluated the sufficiency of Plaintiffs' claims. Thus, Defendants request the Court deny Plaintiffs' motion.

## II. Standard of Review

"A Rule 59(e) motion 'calls into question the correctness of a judgment.'" *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (quoting *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)). "A Rule 59(e) motion must clearly establish either a manifest error of law or fact or must present newly discovered evidence" and cannot be used to "raise arguments that could, and should, have been made before the judgment issued." *Advocare Int'l LP v. Horizon Labs., Inc.*, 524 F.3d 679, 691 (5th Cir. 2008). "Relief under Rule 59(e) is also appropriate when there has been an intervening change in the controlling law." *Schiller v. Physicians Res. Group, Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). Here, Plaintiffs failed to point to any newly discovered evidence

or an intervening change in the controlling law. Thus, the only issue is whether the Court made a manifest error of law.

"A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Shaw v. Broadcast.com, Inc.*, No. 98-cv-2017-P, 2005 U.S. Dist. LEXIS 34553, at *5 (N.D. Tex. Dec. 20, 2005) (quoting *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000); *cf. Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (defining "manifest error" in appellate review context as "one that is plain and indisuputable, and that amounts to a complete disregard of the controlling law.").

Courts have significant discretion in deciding whether to grant a motion to reconsider under Rule 59(e). *Templet*, 367 F.3d at 479. Nevertheless, granting a motion for reconsideration is "an extraordinary remedy that should be used sparingly." *Id.* Thus, in determining whether to grant a motion to reconsider, courts must balance the following judicial imperatives: (1) "the need to bring litigation to an end" and (2) "the need to render just decisions on the basis of all the facts." *Id.*

III.  Analysis

  A.  Subject Matter Jurisdiction

In its ruling granting Defendants' motion to dismiss, the Court concluded that the *Ex parte Young* exception to Eleventh Amendment immunity does not apply to Plaintiffs' claims because Plaintiffs failed to plead sufficient facts to demonstrate their ability to pursue non-frivolous legal claims once the conditions allegedly denying them access to the courts were removed. (Doc. 53, p. 22.)

3

In support of their motion to dismiss for lack of jurisdiction, and during the hearing on the matter, Defendants argued that the *Ex parte Young* exception to Eleventh Amendment immunity did not apply because "Plaintiffs' claims are, on the face of their complaint, legally frivolous." (Doc. 37-1, p. 8.) However, as discussed below, whether a claim is frivolous is not the relevant inquiry under *Ex parte Young*.

### 1. The *Ex parte Young* Doctrine and Plaintiffs' Section 1983 Claims Against Defendants

In *Ex parte Young*, the Supreme Court carved out an exception to Eleventh Amendment immunity. *Ex parte Young*, 209 U.S. at 157. In that ruling, the Court permitted suits against state officials in their official capacity in order to enjoin enforcement of an unconstitutional state statute. *Okpalobi v. Foster*, 244 F.3d 405, 411 (5th Cir. 2001) (citing *Ex parte Young*, 209 U.S. at 157). This exception applies when the state official: (1) has some connection with the enforcement of the statute; or (2) is specifically charged with the duty to enforce the statute and is threatening to exercise that duty. *Id.* at 414-15 (citing *Ex parte Young*, 209 U.S. at 157) ("[i]n making an officer of the State a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional . . . such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the State, and thereby attempting to make the State a party.")).

In *Ex parte Young*, the Supreme Court held that enforcement of an unconstitutional law is not an official act because a state cannot confer authority on its officers to violate the Constitution or federal law. *Aguilar v. Tex. Dep't of Crim.*

*Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998) (citing *American Bank & Trust Co. of Opelousas v. Dent*, 982 F.2d 917, 920-21 (5th Cir. 1993)). The *Ex parte Young* exception "has been accepted as necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.'" *Pennhurst*, 465 U.S. at 105. Under this exception an individual official may be liable only for implementing a policy that is "itself [ ] a repudiation of constitutional rights" and "the moving force of the constitutional violation." *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (citing *Grandstaff v. City of Borger*, 767 F.2d 161, 169-70 (5th Cir. 1985)).

For *Ex parte Young* to apply, the "suit must be brought against individual persons in their official capacities as agents of the state and the relief sought must be declaratory or injunctive in nature and prospective in effect." *Aguilar*, 160 F.3d at 1054 (quoting *Saltz v. Tennessee Dep't of Employment Sec.*, 976 F.2d 966, 968 (5th Cir. 1992)). In *Papasan v. Allain*, 478 U.S. 265 (1986), the Supreme Court opined:

> [*Ex parte Young*] has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past, as well as on cases in which the relief against the state official directly ends the violation of federal law as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence or directly to meet third-party interests such as compensation. As we have noted: Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law. But compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment.
>
> Relief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred even when the state official is the named defendant.

> This is true if the relief is expressly denominated as damages. It is also true if the relief is tantamount to an award of damages for a past violation of federal law, even though styled as something else. On the other hand, relief that serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury.

*Id.* at 277-78 (quotations and citations omitted).

The Supreme Court recently explained more succinctly that in determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, "a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Va. Office for Prot. & Advocacy v. Stewart,* 131 S. Ct. 1632, 1639 (2011) (quoting *Verizon Md. Inc. v. Pub. Svc. Comm'n,* 535 U.S. 635, 645 (2002)).

Here, Plaintiffs identify Defendant Mary Livers ("Livers") as the Deputy Secretary of the Louisiana Office of Juvenile Justice (the "OJJ"). (Doc. 1, ¶ 9.) Plaintiffs' Complaint alleges that Livers is "responsible for the management, oversight, control and policy-making at [the Bridge City Center for Youth], [the Jetson Center for Youth], and [the Swanson Center for Youth], including the administration and day-to-day operations of the Louisiana Office of Juvenile Justice." (Doc. 1, ¶ 9.) Plaintiffs further allege that Livers "is responsible for contracting with facilities as an exercise of her statutory responsibility to provide placement for youth in OJJ legal custody." (Doc. 1, ¶ 9.)

Plaintiffs' identify Defendant Namon Reid III ("Reid") as the Director of the Bridge City Center for Youth ("BCCY"). (Doc. 1, ¶ 10.) Plaintiffs' Complaint alleges

Reid "is responsible for the administration and day-to-day operations of BCCY." (Doc. 1, ¶ 10.)

Plaintiffs identify Defendant Daron Brown ("Brown") as the Director of the Jetson Center for Youth ("JCY"). (Doc. 1, ¶ 11.) Plaintiffs' Complaint allege Brown "is responsible for the administration and day-to-day operations of Jetson Center for Youth." (Doc. 1, ¶ 11.)

Plaintiffs identify Defendant R. Vickie Shoecraft ("Shoecraft") as the Director of the Swanson Center for Youth ("SCY"). (Doc. 1, ¶ 12.) Plaintiffs' Complaint alleges Shoecraft "is responsible for the administration and day-to-day operations of SCY." (Doc. 1, ¶ 12.)

Plaintiffs' Complaint further alleges that "upon committment to OJJ custody, Defendant has sole custody of Plaintiffs and is responsible for their care, treatment and placement." (Doc. 1, ¶ 21.) Plaintiffs allege that Defendants have "neglected their responsibility as sole custodian[s] of Plaintiffs, which is to provide them with meaningful access to courts and counsel." (Doc. 1, ¶ 25.) According to Plaintiffs, "by refusing to allow Plaintiffs meaningful access to counsel," "refusing to allow Plaintiffs to meet with their counsel" and "failing to implement policies and procedures at all facilities that house youth in OJJ custody," Defendants have violated Plaintiffs' First and Fourteenth Amendment rights . . ." (Doc. 1, ¶¶ 51-54.)

Plaintiffs's Complaint alleges that Defendants have "created a series of obstacles designed to impede access." (Doc. 1, ¶ 1.) According to Plaintiffs, "[u[nder [ ] Defendants obstructionist policies, or lack of policies, an incarcerated child is not

provided access to courts and counsel . . ." (Doc. 1, ¶ 1.) Plaintiffs also allege that "Defendants have failed to take any steps to assure access to courts and counsel for youth in OJJ custody that are housed at contract facilities." (Doc. 1, ¶ 1.)

According to Plaintiffs, Defendants have "intimidat[ed] Plaintiffs into not contacting counsel; refus[ed] visits with counsel; cancel[ed] scheduled visits with counsel; refus[ed] phone calls to attorneys after Plaintiffs have experienced crisis and trauma inside of Defendants' facilities; fail[ed] to create effective ways for Plaintiffs to contact counsel; refus[ed] to schedule visits with counsel in a manner timely enough to address the constitutional violations; fail[ed] to have any method to assure that Plaintiffs in contract facilities have access to court and counsel; and fail[ed] to operate a functioning administrative grievance procedure." (Doc. 1, ¶ 32.) Plaintiffs also allege Defendants "routinely return legal mail with adequate postage that is properly addressed to Plaintiffs, thus[,] disallowing access to legal advocacy." (Doc. 1, ¶ 35.) According to Plaintiffs, "Defendants routinely cancel scheduled attorney visits, limit access to clients in serious jeopardy of victimization or violence, and create administrative obstacles that severely delay visitation with Plaintiffs who are in urgent need of legal advocacy." (Doc. 1, ¶ 36.)

Plaintiffs allege that, as a result of Defendants' failure "to provide Plaintiffs with their constitutionally required meaningful access to counsel and courts," "Plaintiffs who receive adult charges while inside [OJJ] facilities have no access to counsel to protect their rights," "Plaintiffs are denied an opportunity to access counsel to confer about possible constitutional violations," and that "Plaintiffs are not provided with

confidential communications with counsel." (Doc. 1, ¶¶ 27-28, 30.) Plaintiffs also allege that they "are routinely intimidated and discouraged from contacting counsel to address violence, abuse, and constitutional violations that occur inside the facilities." (Doc. 1, ¶ 29.)

Accordingly, Plaintiffs seek "declaratory and injunctive relief requiring the Defendants to . . . creat[e] and implement[ ] . . . policies and procedures which help Plaintiffs attain access to meaningful, adequate and effective legal advocacy." (Doc. 1, ¶ 1; *Prayer for Relief*.)

Having accepting all well pled facts as true, and viewing the facts in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs' Complaint, on its face, sufficiently alleges that Defendants Livers, Reid, Brown, and Shoecraft have a duty to provide Plaintiffs' "adequate, effective, and meaningful" access to the courts. The Court also concludes that Plaintiffs' Complaint, on its face, sufficiently alleges that Livers, Reid, Brown, and Shoecraft are currently depriving and/or threatening to deprive Plaintiffs' of "adequate, effective, and meaningful" access to the courts. The Court further concludes that Plaintiffs' Complaint, on its face, sufficiently alleges an ongoing violation of federal law, and seeks relief that is properly characterized as prospective. Further, it is undisputed that Plaintiffs' lawsuit was brought against Defendants Livers, Reid, Brown, and Shoecraft in their official capacities as agents of the State of Louisiana. (Doc. 1, ¶¶ 9-12.)

In sum, the Court concludes that Plaintiffs have met the *Ex parte Young* exception. Thus, Plaintiffs' Section 1983 claims against Defendants are not proscribed

by Eleventh Amendment sovereign immunity. Accordingly, the Court concludes that it was manifest error to dismiss Plaintiffs' claims on this basis.

**B.     Standing**

In further support of their motion to dismiss for lack of jurisdiction, Defendants argued that Plaintiffs' Complaint "ultimately fails to plead facts sufficient to establish standing and to support their jurisdictional allegations." (Doc. 37-1, p. 3.) According to Defendants, Plaintiffs' failed to show an actual injury, and thus, lacked standing to pursue their claims. (Doc. 37-1, p. 9.) In support of their argument, Defendants relied on *Lewis v. Casey*, 518 U.S. 343 (1996). However, Defendants misunderstand the Supreme Court's standard, as discussed in *Lewis*.

As explained by the United States Court of Appeals for the Fifth Circuit:

> *Lewis* involved an inmate's claim that he was denied his constitutional right of access to the courts by the poor quality of his prison's legal library. In that context, the Supreme Court said that a deficient law library, though it might be an "injury in fact," was not a "relevant injury in fact" because there is not, and the plaintiff did not even argue for, a free-standing right to access a legal library. The right to access legal materials derives from the right to access the courts, so a "relevant" injury in *Lewis* had to be one that was at least allegedly caused by being denied access to the courts, i.e., lost or impeded legal claims. Consequently, the plaintiff in *Lewis* lacked standing because he did not even allege an injury that resulted from the alleged legal violation.

*Prison Legal News v. Livingston*, 683 F.3d 201, 212 (5th Cir. Tex. 2012) (citations omitted). Indeed, for purposes of standing, the "injury in fact" test requires both "an injury to a cognizable interest" and that "the party seeking review be himself among the injured." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563 (1992). If the plaintiff was the "object" of the challenged action, then "there is ordinarily little question that

the action or inaction has caused him injury." *Id.* at 561-62; *see also United States v. DeCay*, 620 F.3d 534, 538, n.2 (5th Cir. 2010) ("[W]hether [a plaintiff] has standing to make the argument is distinct from whether the argument has merit.").

Here, Plaintiffs sufficiently allege that they are the "object" of Defendants' actions, or inaction, which interfered with Plaintiffs' constitutional right to access the courts. *See, e.g.*, Doc. 1, ¶ 32. Plaintiffs also sufficiently allege "personal injury" fairly traceable to Defendants' alleged unlawful conduct. *See, e.g.*, Doc. 1, ¶¶ 44, 45, 46; *see also Lujan*, 504 U.S. at 561-63; *Allen v. Wright*, 468 U.S. 737, 751 (1984) (noting that standing requires a "plaintiff [to] allege personal injury fairly traceable to the defendant's allegedly unlawful conduct"). Accordingly, the Court concludes that Plaintiffs have standing to pursue their claims for denial of access to the courts. Thus, Defendants' request that the Court dismiss Plaintiffs' claims on this basis must be denied.

**C.    Whether Plaintiffs Have Sufficiently Pled Claims Upon Which Relief Can Be Granted**

In support of their motion to dismiss for lack of jurisdiction, Defendants also argued that "Plaintiffs' claims are legally frivolous and fail to state a claim upon which relief may be granted . . ." (Doc. 37, p. 1.) However, Defendants' motion sought a dismissal "for lack of jurisdiction," pursuant to Rule 12(b)(1). (Doc. 37-1, p. 1.)

Rules 12(b)(1) and 12(b)(6) provide distinct grounds for dismissal of a claim for relief. Rule 12(b)(6) applies when a plaintiff "fail[s] to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Rule 12(b)(1) applies to claims over which a

federal district court "lack[s] . . . subject-matter jurisdiction." Fed.R.Civ.P. 12(b)(1).

Here, Defendants sought dismissal of Plaintiffs' claims pursuant to Rule 12(b)(1) only. Accordingly, it was manifest error for the Court to evaluate the merits of Plaintiffs' access to the courts claims. Further, contrary to Defendants' assertions, the Plaintiffs' access to the courts claims are not so attenuated, clearly immaterial, or wholly unsubstantial as to warrant a dismissal for lack of jurisdiction pursuant to *Hagan v. Lavine*, 415 U.S. 528 (1974).

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that **Plaintiffs' Motion to Vacate and Reconsider Ruling Dismissing Plaintiffs' Complaint (Doc. 55)** is **GRANTED**.

**IT IS FURTHER ORDERED** that the Court's Ruling (Doc. 53) and Order of Dismissal (Doc. 54) are hereby **VACATED**.

**IT IS FURTHER ORDERED** that Plaintiffs' are granted **LEAVE TO AMEND** their Complaint **no later than April 28, 2014**.

**IT IS FURTHER ORDERED** that Plaintiffs' are granted **LEAVE TO RE-FILE** their motion for preliminary injunction, if necessary, **no later than May 12, 2014**.

**IT IS FURTHER ORDERED** that Plaintiffs' are granted **LEAVE TO RE-FILE** their motion for class certification, if necessary, **no later than May 26, 2014**.

**IT IS FURTHER ORDERED** that this matter is **REFERRED** to the United States Magistrate Judge to immediately set a Scheduling Conference, trial date,

pretrial conference date, and pretrial deadlines.

Baton Rouge, Louisiana, this 31st day of March 2014.

_____
BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA